SAMUEL K. WILLIAMS, Administrator *vs.* THE PRESIDENT, DIRECTORS, &c. OF THE AMERICAN BANK, & others

Where the settlement of an estate that is represented to be insolvent is delayed after the commissioners of insolvency have made their return of the claims allowed by them against the estate, and part of such claims are afterwards paid by other parties, or are withdrawn by the claimants, so that the assets in the hands of the administrator exceed the amount of the remainder of the allowed claims, the judge of probate may correct the list of allowed claims, conformably to these facts, and may add interest to the remaining claims from the time of the commissioners' return to the time of his passing a decree of distribution to the creditors.

SHAW, C. J. This cause comes before this court by way of appeal from a decree of the judge of probate for this county. Williams, the appellant, is the administrator of Silas Bullard, deceased. He represented the estate of his intestate to be insolvent, and a report of commissioners was made in Nov. 1835, by which claims were allowed, to the amount of over $ 100·000. The amount of assets in the hands of the administrator, to meet these claims, was about $ 39·000. Of course the estate was apparently insolvent. It appears by the facts agreed, that in consequence of an ancillary administration in the State of New Hampshire, the settlement of the estate here was delayed until 1841. It further appears, that many of the debts, allowed by the commissioners, were claims against the intestate upon promissory notes or other negotiable instruments, upon which the intestate was liable, but not as principal, and that before a decree of distribution was made, many of these debts were paid by other parties, and of course, as claims against this estate, they were waived and withdrawn. Some of these claims, that were allowed by mistake, were voluntarily waived and withdrawn. And the debts, which were not withdrawn, had been partially paid and satisfied, by the administrator appointed in New Hampshire. In these various modes, the aggregate amount of claims, as allowed by the commissioners, and returned by them to the judge of probate, in 1835, was reduced to the sum of about $ 30·000 ; being less than the balance in the administrator's hands. Upon this state of things, the judge of probate, having corrected the list of claims allowed, conformably to the fore-

27 *

going facts, allowed interest on the same, from the time of the report of the commissioners, Nov. 1835, to the time of the decree of distribution, March 22d 1841 ; by which means the amount was increased to about $ 51·000, leaving the estate still insolvent ; and upon this principle the decree of distribution was made. From this decree an appeal was claimed by the administrator, in behalf of the widow and heirs of the intestate ; and the question is, whether in competition between the creditors of the deceased debtor and such widow and heirs, the creditors are entitled to have interest computed on their claims, before the widow and heirs can claim any thing under the general statute of distribution ; or whether the widow and heirs are entitled to the surplus, over and above the amount of claims reported by the commissioners in 1835, without interest.

It has, unfortunately, so seldom occurred, that an estate, represented insolvent, has ultimately yielded a surplus, that the case now before the court has not before arisen, and there is no direct authority applicable to it.

It has long been the policy of this State to provide for the payment of the just debts of a deceased person, out of the property left by him, before it can go to his heirs or legatees. And as between creditors, who have paid a consideration for the amounts due them, and by whose means, the fund to be distributed may in part have been created or increased, and legatees or heirs, creditors are entitled, *ex debito justitiæ*, and heirs and legatees are to be deemed volunteers. In pursuance of this obvious policy, the provisions of the statute law, so far as they have gone, have been so framed, and we think they ought to be so construed, and the rules of law so applied, as best to promote these two objects ; *first*, that all the property left by the deceased, with its accumulation, if any, should be applied to the satisfaction of the claims of justice ; and *secondly*, that the balance, if any, should be faithfully appropriated to those, who are the declared or presumed objects of his bounty — his legatees and heirs.

The provision on this subject, in the Rev. Sts. *c.* 64, § 1, declares the order in which the personal estate, left by a de·

ceased intestate, shall be appropriated, viz. 1st, certain allowances to the widow ; 2d, the personal estate remaining shall be applied to the payment of the *debts* of the deceased ; 3d, the *residue* to the heirs, &c.

This provision of the revised statutes follows, in substance, but not in terms, the statute of distributions, which preceded it, *St.* 1805, *c.* 90, § 2, which provided that personal estate, after a certain allowance to the widow, should first be applied to the payment of the intestate's debts, and the *residue* distributed. The earlier colony and province laws were to the same effect. Anc. Chart. 205. 290.

The statute having thus directed that all debts shall be first paid, but having laid down no precise rule, to determine how they shall be computed, it is left to the general rules of law, as derived from the dictates of natural justice, and applied in analogous cases, to decide what shall be deemed to constitute debts, within its true meaning. Being a remedial statute, it is to have a liberal construction, to advance the proposed remedy.

In considering whether interest shall be allowed, or not, on the established claims of creditors, and to what time, and upon what principle, it is obvious, that when it is a question between those creditors, as a body, on the one side, and the legatees and heirs on the other, it is very different from the same question, when it arises between the several creditors themselves. In the former case, it is a question whether the creditors, as a body, shall receive more or less out of a fund sufficient to satisfy their just demands and leave something to volunteers. The latter is a question between those who have acknowledged claims on a fund insufficient to pay the whole, as to the proportion in which that fund shall be distributed. In the latter question, legatees and heirs have no interest. Indeed, it is immaterial to the creditors themselves, provided an equitable principle be adopted and applied — with an exception mentioned hereafter — whether interest stop at the death of the deceased debtor, or be computed to the return of the report of the commissioners, or to the decree of distribution ; inasmuch as it will not vary the proportion **in**

vhich those creditors will have the fund distributed amongst .hem — the proportions being the same in either mode of computing ; and it is unimportant, whether such dividend is nominally at a higher or lower rate per cent., the amount to be received being the same. The exception is a rare case, like the present, where the assets would be more than sufficient to pay the debts as they existed at the time of the decease of the debtor, or the return of the report, but insufficient to pay them with interest computed to the time of the decree of distribution. This consideration places the present within the class of cases, where the question is between the creditors as a body, on the one side, and the heirs on the other, and must be governed by the principles applicable to that class of cases.

No question is made by the creditors amongst each other ; no one having complained that interest was not computed high enough upon his own claim, or too high upon that of any other. Such being the difference between these two classes of cases, and the ends to be attained, the rules of law regulating the computation of interest, which have been adopted and applied to adjust the proportions in which creditors shall share an insufficient fund, can have little weight in deciding a question of competition between creditors and heirs.

With the best consideration the court have been able to give to this question, keeping in view the objects and principles thus stated, they are of opinion, that the creditors had a just right to have interest computed upon their demands, to the time of the decree of distribution, and, in competition with the heirs of the deceased, to receive the full amount of such demands with interest. As the assets were not sufficient to pay the full amount thus established, they could only take a distribution amongst themselves proportionably ; but as against the heirs they were entitled to a distribution of the whole. We are of opinion, therefore, that the decree of distribution was right.

Interest is allowed, not only on strict legal grounds, where there is a contract for the payment of interest, or by way of legal damages where there is a tortious detention of a debt, but apon considerations of equity and natural justice, when a party

is entitled to the payment of money, which, owing to various causes, he cannot obtain. The subject of interest was put upon rational and intelligible grounds, in the case of *Robinson* v. *Bland*, 2 Bur. 1085. It was put upon the ground that interest should be allowed on a loan of money after the time fixed for payment, because it was equitable, and in order to assimilate the practice of courts of law to those of equity. And in the same case, it was held that in assumpsit, the interest should not stop at the commencement of the action, but be brought down to the time of the assessment of the damages. The true principle there recognized is, that in justice, the interest should be carried down to the time of the payment of the debt; but as that cannot be done, it should be brought down to the latest period, at which the court can act upon the subject. The same case recognizes the principle, that where interest is recoverable, except in special cases, where it is payable by contract, before the principal is due, interest is incident to the debt, constitutes part of it, and passes with it; otherwise, upon no principle could the plaintiff recover, in an action, money not due when the action was brought.

And in our own practice, interest is, in many cases, allowed upon considerations of equity, not only where the payment of a debt has been prevented by the debtor, but where judgment has necessarily been delayed to await the action of the law. In actions of assumpsit, interest is computed from the date of the writ to the time of the assessment, on demands not bearing interest by contract or usage, or by any rule of positive law; because from that time the plaintiff is delayed of his due, without fault or want of diligence on his part. This was done in the case of *Porter* v. *Bussey*, 1 Mass. 438, and the practice has since become general. So where money is advanced by one for the use of another. *Winthrop* v. *Carleton*, 12 Mass. 4. So interest is given by way of damages for the detention of goods, in cases where the rule of damages is not fixed by statute. *Mattoon* v. *Pearce*, 12 Mass. 410. So interest may be computed on the penalty of a bond, on which interest is not payable in terms, as one of its legal incidents, where it is necessary to secure per-

formance of the condition. *Harris* v. *Clap*, 1 Mass. 308. *United States* v. *Arnold*, 1 Gallis. 348. So in debt on judgment, interest is allowed from the rendition of the first judgment, as incident to the debt. So in this court, when judgment on a verdict is delayed by a motion for a new trial overruled, interest is computed on the verdict, to the time of the rendition of judgment. *Vail* v. *Nickerson*, 6 Mass. 262. Cases of this description might be multiplied ; but these are sufficient to illustrate the position, that interest is often computed and added to the principal, upon principles of equity, where there is no contract to pay, and no rule of positive law requiring it.

But there are cases, some of which were cited at the argument, having a more direct application to the circumstances of the present. In *Heath* v. *Gay*, 10 Mass. 371, it was held, that in a suit against a surety on a probate bond, in favor of a creditor whose claim had been allowed against an insolvent estate, interest should be allowed upon the amount of his dividend, from the demand of payment. In *Fay* v. *Bradley*, 1 Pick. 194, where judgment had been recovered against an administrator on a *scire facias* for waste, interest was cast upon the damages and costs, from the time of the first judgment, deducting payments.

When the question is, whether the heirs are entitled to the surplus in preference to the claim of the creditors for interest, there are some English cases, arising under the bankrupt law, which may throw light upon the subject. *Ex parte Mills*, 2 Ves. jr. 295. *Ex parte Reeve*, 9 Ves. 588.

We are then to apply these principles to the precise case of creditors, having demands due from a deceased debtor, some of which were bearing interest, and others not bearing interest, at the time of his decease, and the settlement of the estate is necessarily delayed, by administrations in other States, or by other causes, for several years, after the decease of the debtor, and some years after the report of the commissioners of insolvency.

At the moment of a man's decease, his affairs are brought to a close ; he can neither contract nor execute contracts, acquire or alienate property, pay or receive money. As his affairs then stand, so they must remain ; and be adjusted with reference to

the grounds on which they then stood, although months and years may elapse before they can be liquidated, and the result declared and carried into effect.   If it were possible that all the assets could be collected, and all the debts ascertained, on the day of his death, the true rule would be, that all the creditors should be paid the amount of the debts then due them, if the assets were sufficient ; otherwise, to divide those assets among them, in proportion to those debts.   In ascertaining those debts, it would seem proper to compute and add the interest on all debts drawing interest by contract or usage ; because in such case the interest then accrued would be as much due and part of the debt as the principal ; in regard to debts not drawing interest, to take the single amount ; in regard to debts payable at a future day, without interest, to make a rebate of interest, for the time unexpired.   This would fix the amount equitably due to the creditors, considered in reference either to their claims as against legatees and heirs, or as between each other, to determine the proportions in which the fund should be divided.   It 's however perfectly manifest, that an estate cannot be so settled.   But all the delay, which occurs after that time, is in fact a delay necessarily incident to the liquidation and settlement of the estate ; and there is no reason in principle, why the loss occasioned thereby should be borne by a creditor whose claim did not happen to bear interest before the death of the debtor, and not by one whose debt was in terms bearing interest.   They are entitled to share in a common fund, in proportion to the amounts due to them respectively, at the decease of the debtor ; and they are delayed, in receiving their dues, by means for which one is no more responsible than the other, and which neither could remove by any diligence.   It appears to us, therefore, that it makes no difference, whether the debts were on interest, or not, prior to the death of the debtor ; and whether the time of his death, or of the report, or of the decree of distribution, be assumed, interest is to stop on all, or be computed on all.   Such was the rule adopted in the case of *Dodge* v. *Breed*, 13 Mass. 537, which embraces many of the points here stated, and is full of instruction on the subject.

As between the creditors, who have paid a full consideration for the amount due to them, and contributed to the estate left by their debtor, and legatees or heirs, who are volunteers, we think the former have a claim to be paid their interest, which is an incident of the debt, and without which their debts are not paid in full, before those legatees or heirs can claim any thing — for the reasons already stated.

Besides ; if the assets consist of notes, bonds, certificates of public debt, or other securities drawing interest, they continue to draw interest, until paid, and then interest is paid to the administrator, for the period which has elapsed since the death of the intestate. Such interest is manifestly the earnings of a fund equitably belonging to the creditors, and should equitably enure to their use. And so, in general, an administrator is not chargeable with interest ; but if he has used the money, or placed out the assets of the estate and realized interest for it, he is to account for that interest. *Stearns* v. *Brown*, 1 Pick. 530. *Dexter* v. *Arnold*, 3 Mason, 290. All such interest is of course the earnings of the fund belonging in equity to the creditors. In a case like the present, where the estate has necessarily remained a long time unsettled, it may reasonably be presumed, that a part of the assets accounted for by the administrator accrued either from interest paid him by others, or interest received by him on an investment of the funds. This fact, however, is immaterial, because it does not constitute the ground of decision ; but it is one of those considerations bearing upon the general proposition, that the creditors ought not to suffer, nor the heirs to profit, by the unavoidable delay occasioned by the settlement of the estate, or by the changes in the condition of the affairs of the estate, occasioned by such delay.

In ordinary cases, it is not very material, even as against heirs, whether the interest is computed to the date of the commissioners' return, or to that of the decree of distribution which usually follows, very speedily, the return of the report. But when it does become material, as in the present case, we are of opinion that it is to be brought down to the decree of distribution. Strictly, upon the principles stated, interest is due till

the debt is paid. But in judicial proceedings, some time must elapse after judgment is made up, before execution can issue and the debt be satisfied, and there is no mode in which the interest can be added for such time, and therefore it is brought down to the latest judicial act, by which the amount due is ascertained ; as in many of the cases cited. In the case of an insolvent estate, it is not the report of the commissioners which finally fixes and judicially determines the amount due to the creditor, but the decree of distribution, made by the judge of probate ; and that is therefore the latest judicial act, to which time interest is to be computed. The opinion of the court is, that the decree of the judge of probate was right, and it is affirmed.

*C. P. Curtis & C. G. Loring*, for the appellant.
*Hillard*, for the appellees.